UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PUBLIC PATENT FOUNDATION, INC.,            :

           Plaintiff,            :            No. 09 Civ. 5881 (RMB)(RLE)

        v.            :            ECF CASE

GLAXOSMITHKLINE CONSUMER            :
HEALTHCARE, L.P.,

                     :

           Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P.'S
MOTION TO DISMISS PURSUANT TO FEDERAL
RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

HOWREY LLP
601 Lexington Avenue
New York, New York 10022-4629
Tel: (212) 896-6500
Fax: (212) 896-5601

*Attorneys for Defendant GlaxoSmithKline
Consumer Healthcare, L.P.*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND .................................................................................................2

    A.    The Law of Patent Marking .............................................................................2

    B.    PubPat's Allegations Against GSK ..................................................................3

III.  ARGUMENT .......................................................................................................5

    A.    PubPat Lacks Standing to Bring the Alleged False Marking Claim
         Against GSK ......................................................................................................6

    B.    Marking With an Expired Patent Number is Not a Violation of
         35 U.S.C. § 292 .................................................................................................8

         1.    Use of the Term "Patented" in 35 U.S.C. § 271 Demonstrates
                that an "Unpatented Article" Refers Only to Articles Which Have
                Never Been Patented ............................................................................ 9

         2.    The Language of 35 U.S.C. § 292 Demonstrates That an Article
                Is Not "Unpatented" Merely Because the Patent Has Expired ................ 10

         3.    Case Law Supports the Finding That Marking an Article with an
                Expired Patent Number Is Not a False Marking Violation ...................... 12

         4.    The Legislative History of the False Marking Statute Indicates that
                Marking with an Expired Patent Is Not a Violation ................................ 14

         5.    Public Policy Also Supports a Finding that Marking an Article with
                an Expired Patent Number Is Not a Violation ......................................... 15

    C.    PubPat's Pleading Is Insufficient to State a Claim .............................................16

IV.   CONCLUSION....................................................................................................19

DM_US:22444096_3

# I.   INTRODUCTION

Plaintiff Public Patent Foundation, Inc. ("PubPat") filed its complaint asserting one cause of action against GlaxoSmithKline Consumer Healthcare, L.P. ("GSK") – False Patent Marking under 35 U.S.C. § 292 based on the continued listing of patent numbers on some of GSK's products after expiration of the patents.  This type of lawsuit was virtually unheard of until a little less than two years ago, when a new cottage industry was born in which plaintiffs having no connection to the industry and having suffered no injury have sought a financial windfall for themselves.  As of today, just over a dozen similar lawsuits have been filed, none of which has been successful, with PubPat being the plaintiff in four such lawsuits filed in this Court.

There are several fundamental flaws with PubPat's complaint that require it be dismissed. First, PubPat's complaint contains absolutely no allegation that it, the consumers it purports to represent, or anyone else was injured in any way by the alleged false marking.  With no allegation of injury, the "hard floor" of Article III standing is absent and there is no subject matter jurisdiction.  Another court in this district recently dismissed a similar false marking complaint due to the same fatal jurisdictional deficiency.  *Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248 (S.D.N.Y. 2009).  This Court should follow suit and dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for a lack of standing.

Second, even if the Court were to find that PubPat had standing to pursue its claims, PubPat's claim that GSK merely continued to mark two products with patent numbers after the patents expired does not constitute false marking under 35 U.S.C. § 292.  As such, the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Third, Section 292 requires that any alleged false marking be done "for the purpose of deceiving the public."  Accordingly, false marking allegations must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  However, the complaint lacks any of the specifics required by rule 9(b) with respect to GSK's allegedly fraudulent conduct. For this reason too, the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

1

## II. BACKGROUND

### A. The Law of Patent Marking

A patentee may collect damages only from the time an infringer has notice of the patentee's patent. 35 U.S.C. § 287. One means by which patent holders may give notice of their patents is by marking the product with applicable patent numbers. *Id.* If the patentee marks its product with a patent number, then damages can be recovered under that patent for all infringing activity within the limitations period, regardless of the infringer's actual notice of the patent. 35 U.S.C. § 287. Patentees therefore have a strong incentive to mark their products and thus ensure recovery of all damages caused by the infringement within the six-year limitations period.

The patent laws' encouragement of patent marking furthers the goal of active competition. A patent must disclose how to make and use the patented invention and set forth the best way to implement the invention. 35 U.S.C. § 112. Accordingly, by marking a patented product with the patent number, the patentee is advertising to the world where to find the instruction manual (the patent) for that product. Once a competitor obtains the patent, it can engage in encouraged activities like designing around the patent, improving on the invention disclosed in the patent, or copying the patent after it has expired. This furthers the patent law's foundational principle of *quid pro quo*, wherein a patentee obtains a limited right to exclude others from his invention in exchange for disclosing that invention to the public. In essence, the patent laws encourage patentees to become the government's advertisers of new and useful inventions through marking products with applicable patent numbers.

As a counterpart to the patent marking provision of Section 287, the false marking provision of the Patent Act, 35 U.S.C. § 292, prohibits: (1) marking a product with a patent number without the consent of the patentee; (2) marking an unpatented article with a patent number; or (3) marking an article with a false statement that a patent application is pending. In the "typical" false marking claim, the plaintiff will accuse a competitor of marking its product with a patent number, where the indicated patent does not cover the product. In addition to this traditional use of the false marking statute, a new cottage industry has recently sprung up

2

wherein a private citizen with no connection to the industry or product at issue files suit against a large corporation, alleging a violation of Section 292 simply because the corporation, upon expiration of a patent, has not removed the patent number from a product covered by the patent. These plaintiffs do not claim to have been harmed by the alleged false marking. Instead, they seek a monetary windfall under a theory that each product marked with an expired patent number could carry a fine of up to $500 payable to the first plaintiff to file suit. None of these false marking plaintiffs has yet to succeed in the courts.

## B. PubPat's Allegations Against GSK

This is not the typical false marking case. PubPat does not sell products or otherwise compete with GSK. PubPat does not even allege that it is a consumer of GSK's products. Rather, PubPat identifies itself as the representative of "otherwise unrepresented parties (*e.g.*, consumers) against various misuses of patents and the patent system by commercial entities." (Compl. ¶ 8.) PubPat purports to assert a claim for false marking under 35 U.S.C. § 292(a) based on allegations that two of GSK's products, Citrucel® Orange Flavor and Citrucel® Sugar Free Orange Flavor, bear patent numbers of expired patents on their labels.[1] (Compl. ¶¶ 13-19.) PubPat does not allege that the patents do not cover the products. Notably absent, in addition, is any allegation that PubPat itself relied on, or was injured in any way by, the alleged false

---

[1] A patent has a certain term that is dictated by statute, and that term is a matter of public record. When the term of a patent has ended, it is often referred to as an "expired patent." However, because the statute of limitations for patent infringement is six years (35 U.S.C. § 286), a patent owner may bring an enforcement action up to a maximum of six years after the patent has expired.

3

marking. (Compl.) Nor does the complaint allege any reliance on or injury to those PubPat purports to represent.[2] (*Id.*)

Section 292, upon which PubPat bases its claim, states in relevant part that:

> (a) . . . Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public . . . Shall be fined not more than $500 for every such offense.

> (b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

The complaint's only allegations regarding the circumstances surrounding the alleged false marking are as follows:

> 19.     Upon information and belief, Defendant and its parent corporation, GlaxoSmithKline PLC, are extremely sophisticated companies that employ multiple in-house patent attorneys and regularly litigate patent-infringement and/or false advertising cases. As such, Defendant knows, or reasonably should know, of the requirements of 35 U.S.C. § 292.

> 20.     Upon information and belief, Defendant marks its CITRUCEL® ORANGE FLAVOR products with "Patent No. 4,626,287, 4,671,823, 4,732,917" for the purpose of deceiving the public into believing that its CITRUCEL® ORANGE FLAVOR products are covered by each of the listed patents.

> 21.     Similarly, upon information and belief, Defendant marks its CITRUCEL® SUGAR FREE ORANGE FLAVOR products with "Patent No. 4,626,287, 4,671,823" for the purpose of deceiving the public into believing that its CITRUCEL® SUGAR FREE ORANGE FLAVOR products are covered by each of the listed patents.

> 22.     Upon information and belief, Defendant knows, or reasonably should know, that marking the above-described CITRUCEL® products with false patent statements was and is illegal under Title 35 of the United States Code. At a minimum, Defendant had and has no reasonable basis to believe that its use of the false markings was or is proper or otherwise permitted under federal law. Specifically, the labeling discussed above was written in 2007, well after each of the patents included in that labeling had expired.

---

[2] It appears that PubPat does not have consumer members on whose behalf it is purporting to act; rather, it seems that PubPat's allegation that it acts for certain consumers is merely a unilateral assertion. (Compl. ¶ 8.)

4

(Compl. ¶¶ 19-22.) As can be seen, all of PubPat's allegations are pled on "information and belief," and there are no allegations of any injury to PubPat, the parties it claims to represent or anyone else, nor are any facts pled in support of PubPat's conclusory allegations of GSK's intent in paragraphs 20 and 21 of the complaint.

Although PubPat represents itself as a consumer advocate, PubPat never contacted GSK before it filed this suit to inquire whether GSK was even aware that the patents listed on the two GSK products had expired. In fact, upon receipt of the complaint, GSK immediately undertook an investigation of the status of the patents listed on the products. Although GSK disagrees that Section 292 applies to continued marking with a patent number upon expiration, it has taken steps to remove the expired patent numbers from the label for the products identified in the complaint. Even after being informed of this action by GSK which belies the statutorily required deceptive intent, PubPat insists on continuing with this suit.

## III.   ARGUMENT

PubPat lacks standing to bring this suit because it has not alleged any injury incurred by anyone as a result of the alleged false marking. Because Article III courts may only consider actual cases and controversies, *i.e.*, where the plaintiff has alleged a redressable injury, there is no subject matter jurisdiction over PubPat's claim. Even if PubPat's complaint can be read as an attempt to proceed as a *qui tam* relator, the lack of any alleged injury to the government is fatal to this action, as determined in *Stauffer*, 615 F. Supp. 2d 248. In addition, marking an article with an expired patent number where the patent protected the product before expiration is not a violation of the false marking statute. Finally, the complaint's allegations are utterly deficient under Rule 9(b), as they allege no facts that would support a reasonable inference that GSK acted with a "purpose to deceive the public." The complaint must therefore also be dismissed for lack of standing under Rule 12(b)(1) and/or failure to state a claim under Rule 12(b)(6).

5

## A. PubPat Lacks Standing to Bring the Alleged False Marking Claim Against GSK

Article III limits federal courts to deciding only actual cases and controversies. To establish Article III standing, a plaintiff must demonstrate that (1) it has "suffered an injury in fact – invasion of a legally protected interest which is . . . concrete and particularized and actual or imminent, not conjectural or hypothetical"; (2) there is a "causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court"; and (3) the injury must be amenable to being redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Friends of Earth, Inc. v. Laidlaw*, 528 U.S. 167, 180-81 (2000) (same). That Section 292 itself does not mention "injury" cannot salvage PubPat's standing: the requirement that a plaintiff show an injury-in-fact is the "hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1152 (2009).

As noted above, the complaint is completely devoid of any claim of injury allegedly suffered by PubPat or those consumers it purports to represent. While some courts have found that a defendant's direct competitors may be able to show the requisite "injury-in-fact" to state a false marking claim, PubPat makes no allegation that it or those it purports to represent are GSK's competitors. *See Mohawk Indus., Inc. v. Interface, Inc.,* No. 07-212, 2008 WL 5210537, at *3 (N.D. Ga. Nov. 6, 2008) (finding plaintiffs, as competitors of defendant, had suffered a clear injury from the alleged false marking, giving plaintiffs standing). The complaint therefore fails to allege any personal injury to plaintiff that could be redressed by this lawsuit.

As it alleges no personal injury, PubPat appears to be filing this case as a professional plaintiff seeking to collect a monetary windfall for alleged conduct that has had no alleged impact on it.[3] Even if PubPat views itself as a *qui tam* plaintiff (of which there is no assertion in

---

[3] This case is one of a string of false marking claims that PubPat has filed against various defendants in order to collect a financial windfall. *See* J. Randy Beck, *The False Claims Act and*

6

the complaint), Article III standing would require that PubPat establish that the government suffered a concrete injury from the alleged false marking. A *qui tam* plaintiff may sue "in vindication of those rights [of another] provided the assignor – *i.e.*, the government – has itself suffered an injury in fact causally connected to the defendant that is likely to be redressed by the court." *Stauffer*, 615 F. Supp. 2d at 253 (S.D.N.Y. 2009), *citing Vt. Agency of Nat'l Res. v. United States ex rel. Stevens*, 529 U.S. 756, 774 (2000). This harm must be "actual" and "concrete": an "abstract harm" such as "injury to the interest in seeing that the law is obeyed . . . deprives the case of the concrete specificity" required for Article III standing. *FEC v. Atkins*, 524 U.S. 11, 24 (1998). In relation to the false marking statute, in particular, a *qui tam* relator must identify the specific injury alleged to have been caused by the false marking, because while in "most *qui tam* actions, the alleged injury to the United States as assignor is obvious and proprietary. . . . In the context of a section 292 claim . . . the injury to the United States as assignor is far less evident. By its terms, the statute seeks to protect the public not simply from false marking of unpatented articles but instead from false marking that is fraudulent, deceptive, and intentional. Accordingly, the actionable injury in fact that the government is able to assign would have to be an injury to it or to the public stemming from fraudulent or deceptive false marking." *Stauffer*, 615 F. Supp. 2d at 254.

A court in this district recently dismissed a false marking complaint for failure to sufficiently allege an actual injury to the government, where the complaint, unlike here, actually did make an attempt to allege public injury. *Id.* at 248. The *Stauffer* plaintiff claimed standing

---

*the English Eradication of Qui Tam Legislation*, 78 N.C.L. Rev. 539, 566 (2000) (noting historical abuse of *qui tam* statutes by "professional informers"). GSK is aware of the following false marking actions that have been filed by PubPat this year: *Public Patent Found., Inc. v. Cumberland Packaging Co.*, No. 09-4360 (S.D.N.Y. 2009); *Public Patent Found., Inc. v. Iovate Health Sci. Research Inc.*, No. 09-4361 (S.D.N.Y. 2009); *Public Patent Found., Inc. v. McNeil PPC, Inc.*, No. 09-5471 (S.D.N.Y. 2009).

7

as a *qui tam* relator, and alleged that the false marking (1) harmed the U.S. economy by advertising monopolies that defendants did not possess; (2) had the potential to discourage potential competitors from commercializing a competing product; and (3) quelled competition resulting in harm to the U.S. economy. *Id.* at 249, 251. The court held that those allegations of public harm were insufficiently "concrete and particularized" or "actual or imminent" to confer standing on the plaintiff as a *qui tam* relator:

> In particular, the complaint fails to allege with any specificity an actual injury to any individual competitor, to the market for [the product], or to any aspect of the United States economy. That some competitor might somehow be injured at some point, or that some component of the United States economy might suffer some harm through defendant's conduct, is purely speculative and plainly insufficient to support standing.

*Id.* at 255. Here, with no allegation of any injury assigned to PubPat by the government, there can be no standing for PubPat as a *qui tam* relator.

As PubPat has failed to allege any actual injury, either to itself, those it purports to represent, or the public/government, it necessarily follows that it also fails to establish the final two prongs required for Article III standing: that there is a causal connection between the injury and the conduct complained of and that the injury would be redressed by a decision in PubPat's favor. PubPat therefore lacks Article III standing and the complaint must be dismissed for lack of subject matter jurisdiction.

**B. Marking With an Expired Patent Number is Not a Violation of 35 U.S.C. § 292**

The false marking statute, 35 U.S.C. § 292(a), states that anyone may be fined for marking an "unpatented article" as patented with the intent to deceive the public. This section does not itself define the term "unpatented." However, when considered in the context of Title 35, it is clear that "unpatented article" does not include an article marked with an expired patent number. For this reason, PubPat's complaint fails to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6).

8

1. **Use of the Term "Patented" in 35 U.S.C. § 271 Demonstrates that an "Unpatented Article" Refers Only to Articles Which Have Never Been Patented**

Section 292 bars placing a patent number on an "unpatented" article:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public.

Language in another portion of the Patent Act makes clear that an article covered by an expired patent is not an "unpatented" article. 35 U.S.C. § 271(a) defines patent infringement as follows:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States **any patented invention during the term of the patent therefor**, infringes the patent.

(Emphasis added). Because all words of a statute are to be given effect such that no term is superfluous, the modifying phrase "during the term of the patent therefore" must add meaning to the term "patented" in Section 271(a). *Argo Dutch Indus. Ltd. v. United States,* 508 F.3d 1024, 1032 (Fed. Cir. 2007) (following the "cardinal principle of statutory construction that a statute ought . . . to be so construed that . . . no clause, sentence, or word shall be superfluous"), *quoting TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001)). However, if an invention were "patented" only until the patent expires (*i.e.*, only during its term), inclusion of the phrase "during the term of the patent" in the statute would have been superfluous. Accordingly, a "patented" article can only mean an article covered by **any** patent irrespective of whether the patent is expired or unexpired. Any other construction of "patented" would render the modifying phrase superfluous, contrary to principles of statutory construction. *See Argo Dutch,* 508 F.3d at 1032.[4]

---

[4] Other sections of Title 35 also support this construction. *See* 35 U.S.C. § 271(g) ("if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent"); *see also* § 271(i) ("As used in this section, an "offer for sale" or an "offer to sell" by a person other than the patentee or any assignee of the patentee, is that in which the sale will occur

Correspondingly, "unpatented article" in Section 292(a) must mean "not covered by the claims of any patent" irrespective of whether the patent is expired or unexpired. This definition fits squarely with the usual allegation of false marking, where an individual alleges that a particular article is not covered by (*i.e.,* not within the scope of) the claims of a particular patent.

## 2. The Language of 35 U.S.C. § 292 Demonstrates That an Article Is Not "Unpatented" Merely Because the Patent Has Expired

Section 292 prohibits three types of conduct as false marking: (1) counterfeit marking (marking with another's patent number without the patentee's consent); (2) false patent marking (placing a patent marking on an unpatented product); and (3) false patent application marking (indicating a patent application is pending that will cover a product when that is not the case). *See FMC Corp. v. Control Solutions, Inc.,* 369 F. Supp. 2d 539, 584 (E.D. Pa. 2005), *citing* 7 Chisum on Patents § 20.03[7][c]. Section 292 does not on its face prohibit marking with an expired patent number.

A comparison of the language and structure of the second paragraph of Section 292 – relating to marking an article when covered by a patent – and the third paragraph – relating to marking an article when covered by a patent application – reveals that an article is not "unpatented" when it is covered by an expired patent. Specifically, the third paragraph of Section 292 states that:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, **when no application for patent has been made, or if made, is not pending,** for the purpose of deceiving the public.

(Emphasis added). Under this paragraph, there are two distinct bases for a violation. There is a violation if one marks a product as being the subject of a patent application either (1) when no patent application has ever been made that covers the article (*i.e.,* when there has never been a

---

before the expiration of the term of the patent"). These additional modifying phrases would be unnecessary if the root word was already limited to patents that have not expired.

10

patent application associated with the product) or (2) when there was a patent application that covered the article but that application is no longer pending (*i.e.,* when the associated patent application has, in effect, expired).[5] This paragraph explicitly makes marking an article as subject to a patent application when an associated application has been abandoned a violation of Section 292.

In contrast, the second paragraph of Section 292 contains only a single violation and makes no reference to a circumstance when an associated patent has expired.

> Whoever marks upon, or affixes to, or uses in advertising in connection with **any unpatented article**, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public.

35 U.S.C. § 292 (emphasis added). Under this paragraph, a violation exists if an "unpatented article" is marked to indicate that there is an associated patent. *Id.* Unlike paragraph three, which explicitly references both marking an article that has never been the subject of a pending application and marking an article when a patent application is no longer pending, this paragraph defines a violation only in relation to articles that have not been patented. This different structure indicates that Congress intentionally chose to distinguish between marking when a patent application is no longer pending, which is a violation, and marking with an expired patent number, which is not a violation. *O'Neill v. HUD*, 220 F.3d 1354, 1360 (Fed. Cir. 2000) ("[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion"), *quoting United States v. Wong Kim Bo*, 472 F.2d 770, 722 (5th Cir. 1972).

---

[5] A patent application may cease to be "pending" if it is abandoned. *See* Manual of Patent Examining Procedure § 203.05 (8th ed., 7th rev. 2008, attached as Ex. 1 to the Manice Declaration.)

11

### 3. Case Law Supports the Finding That Marking an Article with an Expired Patent Number Is Not a False Marking Violation

As a question of patent law, the interpretation of Section 292 is governed by the precedents of the Federal Circuit. 28 U.S.C. § 1295(a)(1). The only Federal Circuit decision to address the issue of marking with expired patent numbers upheld a ruling that such activity was not false marking, although it did not consider the question whether marking with an expired patent could ever be false marking as a matter of law. *See Arcadia Mach. & Tool, Inc. v. Sturm, Ruger & Co.,* 786 F.2d 1124, 1125 (Fed. Cir. 1986). In *Arcadia*, the district court noted that the patentee "included expired patents on labels used on firearm boxes," and concluded that this label was "not deceptive or violative of § 292 as a matter of law." *Arcadia Mach. & Tool, Inc. v. Sturm, Ruger & Co.*, 227 U.S.P.Q. 655, 655-56 (C.D. Cal. 1985).

Most other courts that have addressed this issue have held that marking with an expired patent is not false marking as well. In the earliest case known to address the issue, a district court held that a defendant did not violate the false marking statute when it marked its products with reference to expired patents. *Wilson v. Singer Mfg. Co.,* 12 F. 57, 58 (C.C. N.D. Ill. 1882). Specifically, the defendant had marked its products with the expired patent number and date of patent issuance, in accordance with the statutory requirements of that time. *Wilson v. Singer Mfg. Co.*, 30 F. Cas. 223, 223-24 (D.C. N.D. Ill. 1879). In addition to taking express notice of the need to narrowly construe the false marking statute as a penal provision, the district court found that the public would not be deceived by markings designating an expired patent because the "public" is presumed to know the law as well as the patentee, including that the patent was expired. *Id.* at 224. In affirming this opinion, the Circuit Court specifically noted that, just as in the presently pending case, "[i]t is not disputed but that these patents existed upon the machine, and were issued in the manner and at the time stated." *Id.* Therefore, because the patents at issue covered the products, but were merely expired, the court concluded that the offense of false patent marking was not possible. *Id.*

12

Similarly, in a more recent case, the district court in *FMC* held that marking with an expired patent did not violate Section 292 because there is "no reason why [the patentee] may not display its patent number to inform the public of where to acquire the informational and teaching *quid pro quo* that underlies the granting of patent protection." *FMC*, 369 F. Supp. 2d at 584. In other words, a patentee does not violate the pro-competitive spirit of Section 292 by marking an article with an expired patent number because this number would only help the public identify information about the article.

Although two other district courts have ruled that marking with expired patents can constitute false marking under certain circumstances, neither advances a persuasive argument. In *Pequignot*, the court treated the issue as one of first impression, and did not address many of the arguments raised in the present motion to dismiss. *Pequignot v. Solo Cup Co.*, 540 F. Supp. 2d 649, 652 (E.D. Va. 2008). In particular, the *Pequignot* decision did not discuss the language and structure of Section 292, nor the definition of the word "patented" included in Section 271. Further, the *Pequignot* decision failed to consider the legislative history of the false marking act. In *D.P. Wagner*, another district court indicated – in a footnote – that marking an article with an expired patent number violates Section 292. *D.P. Wagner Mfg., Inc. v. Pro Patch Sys., Inc.*, 434 F. Supp. 2d 445, 452 n.3 (S.D. Tex. 2006). This decision also lacked any statutory analysis and relied solely on one statement from Chisum on Patents that "a strong case can be made" for false marking based on an expired patent. *Id.*; *see* Chisum on Patents § 20.03 [7][c][vii], at 20-657, attached as Ex. 2 to the Manice Declaration. However, Chisum does not cite to any authority for that position. *Id.* ("There is little authority on whether continued use of a patent number on an article after expiration of the patent constitutes culpable mismarking.") Moreover, the *D.P. Wagner* court was likely influenced by the egregious conduct of the defendant, which included (i) marking products with several other patents that did not cover the products and (ii) sending letters to customers threatening suit based on its patents, regardless of whether they actually covered the product. *See* Plaintiff D.P. Wagner Mfg., Inc.'s Motion For Partial Summary

Judgment 8-10, Case No. 4:04-cv-0461 (Ex. 3 to the Manice Declaration), *see also D.P. Wagner,* 434 F. Supp. 2d at 445.

GSK, in contrast, has not engaged in any such egregious behavior. PubPat has not even pled this type of conduct, as there is nothing to suggest that (i) GSK marked the products at issue with patents that do not cover the products or (ii) improperly sought to enforce the patents at issue. For these reasons, the *D.P. Wagner* case, like the *Pequignot* case, should be rejected in light of the language of the Patent Act and the persuasive analyses of *Arcadia, Wilson,* and *FMC.*

### 4. The Legislative History of the False Marking Statute Indicates that Marking with an Expired Patent Is Not a Violation

From 1842 until today, the false marking statute has prohibited the false marking of an "unpatented article." *Compare* S. 220, 27th Cong. § 5 (2d Sess, 1842) (Ex. 4 to the Manice Declaration) *with* 35 U.S.C. § 292(a). However, in 1860, a bill was introduced in Congress that would have changed the phrase "unpatented article" to "any article . . . not at the time secured by a patent." S. 424, 36th Cong. § 20 (1st Sess. 1860) (Ex. 5 to the Manice Declaration). If adopted, this language would have brought marking with an expired patent within the scope of Section 292. However, Congress chose instead to retain the original "unpatented article" language, indicating an intent not to expand Section 292 to cover marking an article with an expired patent number. *See Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac Tel. Co.,* 464 U.S. 30, 40 (1983) (holding failure of a bill to pass was probative of congressional intent). Moreover, it seems unlikely that Congress would have debated and rejected a change from a two-word phrase to an eight-word phrase unless the latter had a meaning that was substantively different from the former.

The legislative history comments for Section 292 also support the position that articles that are marked with an expired patent number are outside the scope of the statute. Specifically, "Section 292 is a criminal statute relating to falsely marking an article as being patented when it was not patented, which is now the present law." S. Rep. No. 82-1979 (1952), *as reprinted in* 1952 U.S.C.C.A.N. 2394, 2403. This comment says nothing about expired patents, and given

14

the requirements of strict statutory construction, it must be viewed as supporting a construction of the word "unpatented" as not including expired patents. Therefore, both Congress' discussion of this phrase and the legislative history comments to Section 292 buttress the definition of "unpatented" article as not including an article covered by an expired patent.

### 5. Public Policy Also Supports a Finding that Marking an Article with an Expired Patent Number Is Not a Violation

Inclusion of an expired patent number on an article is a benefit to the public and a detriment to the patentee. This is because of the ease with which a potential competitor can determine a patent's expiration date and the useful information provided by the patent. In fact, the practice of marking a product with an expired patent serves the public policy of promoting free competition, which is the underlying goal of the marking statute. *See Clontech Lab. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356 (Fed. Cir. 2005); *see also* 35 U.S.C. § 287. Identifying an expired patent on a product allows a potential competitor to quickly identify and obtain a copy of the patent, which provides the competitor with at least three pieces of useful information: (1) the patent's filing, issuing, and thus expiration date; (2) the patent specification, which provides information sufficient to enable a person of skill in the art to make and use the invention; and (3) the best mode for making and using the invention. *See* 35 U.S.C. § 112.

This benefit of expired patent numbers has been recognized by a variety of courts. For example, in *FMC* the court noted that "purchasers instead of being deceived, have only desirable or important facts imparted to them." *FMC*, 369 F. Supp. 2d at 584 (holding that marking with an expired patent did not run afoul of Section 292 because there is "no reason why [the patentee] may not display its patent number to inform the public of where to acquire the informational and teaching *quid pro quo* that underlies the granting of patent protection"); *see also Pequignot v. Solo Cup Co.*, Case No. 07-cv-00897, 2009 WL 2589158, at *6 (E.D. Va. Aug. 25, 2009) (holding that "marking an article with an expired patent can work to the marker's detriment, because public patent documents reveal all of the previously patented design features that are now in the public domain, thus creating a road map for anyone wishing to legally copy the

15

product"). Thus, rather than disenfranchising or burdening the public, marking with an expired patent number actually serves the patent law's public policy interest of encouraging competition.

### C.    PubPat's Pleading Is Insufficient to State a Claim

PubPat's complaint must be dismissed for the additional reason that it fails to comply with Federal Rule of Civil Procedure 9(b)'s pleading requirements. Courts have held that because false marking does not violate Section 292 unless done "for the purpose of deceiving the public," it is subject to the heightened pleading requirements of Rule 9(b). *Juniper Networks v. Shipley*, No. 09-696, 2009 WL 1381873, at *4 (N.D. Cal. May 14, 2009) ("The false marking statute is a fraud-based claim, which is subject to the pleading requirements of Federal Rule of Civil Procedure 9(b)"); *Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, No. 00-2430, 2006 WL 4448613, at *24 (N.D. Ala. Jan. 13, 2006) ("Both the language of Section 292 and the binding authority in this Circuit place on the [plaintiffs] the burden to plead and produce facts demonstrating that the [defendants], in marking the solution with the '515 patent, had the specific intent to deceive the public into believing something that the plaintiffs knew to be false"), *aff'd in relevant part by* 482 F.3d 1347 (Fed. Cir. 2007); *see also Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1359 (9th Cir. 1980).

Although the Federal Circuit has not had the opportunity to address the pleading requirements for Section 292's "purpose to deceive" element itself, that court recently clarified the pleading requirements for the other instance where patent law requires a claimant to prove an "intent to deceive": inequitable conduct. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009). A plaintiff alleging that a defendant has obtained its patent through inequitable conduct before the Patent and Trademark Office (PTO) must show, among other things, that its actions were done "with intent to deceive" the PTO. The *Exergen* decision makes clear that pleading an "intent to deceive" must conform with Rule 9(b)'s stringent requirements, and that a conclusory pleading will not suffice. *Id.* at 1326. The court held that although Rule 9(b) permits "knowledge" and "intent" to be averred generally, in order to state a claim "the pleadings must allege sufficient underlying facts from which a court may reasonably infer that a party acted with

16

the requisite state of mind." *Id.* at 1327. And although this case would be reviewed by the Federal Circuit, the Second Circuit's precedent regarding Rule 9(b) pleading requirements is in accord with the Federal Circuit's *Exergen* decision. *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006) ("But because we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent"); *Krause v. Forex Exch. Mkt., Inc.,* 356 F. Supp. 2d 332, 338 n.49 (S.D.N.Y. 2005) (plaintiff must allege with particularity "facts that give rise to a strong inference of fraudulent intent"), *quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,* 375 F.3d 168, 187 (2d Cir. 2004); *Glidepath Holding B.V. v. Spherion Corp.,* No. 04-9758, 2007 WL 2176072, at *10 n.5 (S.D.N.Y. June 26, 2007) (court must consider exculpatory inferences in evaluating a complaint under Rule 9(b)).

PubPat's complaint conclusorily alleges that GSK falsely marked its products with an intent to deceive. No facts are provided that make this conclusion any more consistent with an intent to deceive than with no intent to deceive. "Whereas an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b), this inference must be the *single most reasonable* inference able to be drawn from the evidence to meet the clear and convincing standard." *Exergen,* 575 F.3d at 1329 n.5. PubPat's allegations clearly fail this requirement. Moreover, even the complaint's conclusory allegations are made "upon information and belief" rather than actual knowledge. (Compl. ¶¶ 19-22.) "Pleading on information and belief is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen,* at 1330. "Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990). No facts are alleged by PubPat in support of its alleged "information

and belief," and there is no support for any reasonable inference that GSK acted for the purpose to deceive the public.

The only allegation that may be an implicit attempt to support its conclusory allegations is the allegation that because (again, "upon information and belief") GSK presumably has attorneys, any violation of Section 292 must have been done with intent:

> 19.     Upon information and belief, Defendant and its parent corporation, GlaxoSmithKline PLC, are extremely sophisticated companies that employ multiple in-house patent attorneys and regularly litigate patent-infringement and/or false advertising cases. As such, Defendant knows, or reasonably should know, of the requirements of 35 U.S.C. § 292.

(Compl. ¶ 19.) This allegation fails to support the inference that GSK acted with the purpose of deceit for at least three reasons. First, it is not a reasonable inference that anyone who violates a statutory provision, and also has attorneys, must therefore have acted with an intent to violate the statute and deceive the public. Not only would it defy common sense, but permitting an inference of intent from the fact that someone has an attorney would fly in the face of the federal courts' policy of encouraging consultation with attorneys, as reflected in the attorney-client privilege.

Second, as noted by the Federal Circuit, false marking is not a strict liability offense. *Clontech*, 406 F.3d at 1352. Even if a defendant knew that it was marking its product with an inapplicable patent, and even if that defendant was aware of Section 292, there would be no violation unless the false marking was done "for the purpose of deceiving the public," which can't be inferred from the simple fact of marking with an inapplicable patent. *Juniper*, 2009 WL 1381873, at *4 ("[Plaintiff's] conclusory allegations that [Defendant] 'knew' his reference to the patents was 'false' are thus insufficient to plead an intent to deceive under section 292(a)").

Finally, a similar argument has already been rejected by the courts. In *Douglas v. Wal-Mart Stores, Inc.,* No. 05-152, 2005 WL 3234629, at *7 (E.D. Pa. Nov. 30, 2005), a false marking plaintiff claimed that defendant's assertion that he was "experienced in intellectual property litigation," was a sufficient fact to support plaintiff's conclusory allegation that the

alleged false marking was done with an intent to deceive the public. The court rejected this argument because such an allegation did not permit the inference of intent, and held that such allegations were insufficient to state a claim for false marking, and dismissed the complaint. *Id.*

## IV. CONCLUSION

PubPat's failure to allege any injury is fatal to the subject matter jurisdiction of this Court. Article III standing requires that a plaintiff (or those he represents) have suffered an "actual and imminent," "concrete and particularized" injury. Because PubPat has failed to assert any injury, this action must be dismissed under Rule 12(b)(1). In addition, because the false marking statute does not prohibit patentees from marking an article with an expired patent number, this claim should be dismissed under Rule 12(b)(6). Finally, the conclusory allegations in the complaint fail to satisfy the pleading requirements of Rule 9(b), requiring dismissal of the complaint pursuant to Rule 12(b)(6).


Dated: September 30, 2009
New York, New York

Respectfully submitted,
By: ___/s/ Theresa M. Gillis___
Theresa M. Gillis (TG-2036)

HOWREY LLP
601 Lexington Avenue
New York, New York 10022-4629
Tel: (212) 896-6500
Fax: (212) 896-5601
GillisT@howrey.com

Jason White (*pro hac vice*)
321 North Clark Street
Suite 3400
Chicago, Illinois 60654
Tel: (312) 595-1239
Fax: (312) 595-2250
WhiteJ@howrey.com

*Attorneys for Defendant GlaxoSmithKline*
*Consumer Healthcare, L.P.*

19

## CERTIFICATE OF SERVICE

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on September 30, 2009.

_____
Charles D. Manice (CD 2569)