UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ x
PUBLIC PATENT FOUNDATION, INC.              :
                                            :   09-cv-5881 (RMB)(RLE)
                       Plaintiff,           :
            v.                              :   ECF CASE
                                            :
GLAXOSMITHKLINE CONSUMER                    :
HEALTHCARE, L.P.,                           :
                                            :
                       Defendant.           :
------------------------------------------------------------ x
```

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

Daniel B. Ravicher (DR-1498)
David Garrod, Ph.D. (DG-6759)
Public Patent Foundation (PUBPAT)
Benjamin N. Cardozo School of Law
55 Fifth Ave., Suite 928
New York, NY 10003
Tel: (212) 790-0442
Fax: (212) 591-6038

As requested by the Court, Plaintiff Public Patent Foundation ("PUBPAT") submits this memorandum in opposition to Defendant GlaxoSmithKline Consumer Healthcare, L.P.'s ("GSK's") Motion to Compel Discovery on Plaintiff's Previous Settlements in Actions Brought Under 35 U.S.C. § 292.  Because GSK has not, and cannot, establish that the settlements from unrelated actions have any relevance to any issue in this case, and further because those settlement agreements are protected by the work product privilege, PUBPAT respectfully submits that GSK's motion should be denied.

## I.     Introduction

The settlements that GSK seeks are confidential and relate to cases that bear no similarity to the present action, other than the mere fact that they were brought under the same statute, 35 U.S.C. §292.

GSK cites no §292 case where a settlement agreement has ever been considered, relied upon, or even produced.  Nor does GSK cite any case under any statute where a court looked to previous settlements in determining the size of a penalty or fine, or even directed that such settlements be produced because they might be relevant to determining the size of such a penalty or fine.  Instead, GSK argues that PUBPAT's settlements from unrelated actions are relevant here because: (i) damages will be "difficult to quantify" and "there is a least the *possibility* that the settlements will lead to admissible evidence" (Mem. at 4 (emphasis in original)); (ii) "there is at least the *possibility* that PubPat's prior settlements may be relevant to impeach PubPat's damages witness" (Mem. at 5 (emphasis in original)); or (iii) "there is at least the *possibility* that discovery of PubPat's settlement agreements may lead to admissible evidence with respect to PubPat's self-portrayal as a public-minded charity" (Id. (emphasis in original)).

Taking these in reverse order and addressing reason (iii) first, GSK cannot seriously expect the Court to compel production of confidential settlements merely because they might help GSK to smear PUBPAT. As to reason (ii), PUBPAT has no plans to rely in any way on its previous settlements. Therefore, these agreements will not be relevant to impeach any PUBPAT damages witness. Finally, as to reason (i), GSK bases its assertions of relevance solely on the Federal Circuit's decision in ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860 (Fed. Cir. 2010). However, as discussed below, GSK's reliance on ResQNet is misplaced, and no court has ever applied ResQNet as GSK would have this Court apply it.

Additionally, the settlement agreements are protected by the work product privilege, as their disclosure would reveal plaintiff's litigation strategy.

## II. ResQNet Has No Relevance To False Marking Damages

ResQNet was a patent infringement case. This is a false marking case. Because patent infringement and false marking are completely different causes of action, ResQNet has no inherent relevance to this action. Indeed, the only analogy posited by GSK is its assertion that ResQNet — like this case — involves damages that were "hard" or "difficult" to "quantify." (Mem. at 3-4.) But this cannot possibly be a basis to apply the rules from patent infringement jurisprudence to false marking actions. By this logic, settlements from other sorts of difficult-to-value claims — such as defamation, pain-and-suffering, loss-of-consortium — would be equally relevant in determining the penalty to be assessed against GSK in this action.

Unlike patent infringement damages, which are fundamentally compensatory, e.g., ResQNet, 594 F.3d 860, 868 ("a patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by

the infringer'") (quoting 35 U.S.C. § 284), false marking actions do not even involve "damages," but rather a "fine" or "penalty." See 35 U.S.C. § 292(a) ("Whoever ... - Shall be fined not more than $500 for every such offense."); § 292(b) ("Any person may sue for the penalty, ..."); Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005) ("The statute supplies a civil fine."). Whereas the infringement damages statute (§ 284) expressly calls for the calculation of a "reasonable royalty," absolutely nothing even remotely analogous exists in the false marking statute (§ 292). Thus, the entire reason that "past and present royalties received by the patentee for the licensing of the patent in suit" are relevant in an infringement suit — i.e., because they "prov[e] or tend[] to prove an established royalty" — has no bearing in a false marking action. ResQNet, 594 F.3d 860, 869 (citation and internal quotations omitted).

But even if there existed a statutory basis to analogize the fines in different false marking actions, false marking cases never arise in a situation where the facts would permit such analogy. In patent infringement, one often finds many parties (makers of laptop computers, for example) all infringing the same patent (on computer memory, for example). But nothing analogous ever happens in false marking cases. Indeed, PUBPAT is unaware of any situation where the same patent has been falsely marked by multiple parties. Thus, even if the statute and case law supported it, attempting to use settlements to justify a false marking fine would present the same problem that the Federal Circuit criticized in ResQNet, where "Dr. David based his damages on seven ResQNet licenses, five of which had no relation to the claimed invention." 594 F.3d 860, 870.

III.     Courts Do Not Apply ResQNet As GSK Would Have This Court Apply It

Even though GSK anchors its theory of relevance almost entirely on ResQNet, GSK

declines to cite even a single discovery-related case that applies the ResQNet doctrine. The reason, of course, is that not one of them supports GSK's position.

ResQNet is routinely cited for the proposition that settlements or licenses involving the patent(s) or product(s) in suit are potentially relevant, and thus discoverable. See Wyeth v. Orgenus Pharma Inc., 2010 U.S. Dist. LEXIS 111004 (D.N.J., Oct. 19, 2010) (citing ResQNet and compelling production of "license agreements and settlement agreements related to the settlement of other litigation *based on the patents-in-suit*"); Tyco Healthcare Group LP v. E-Z-EM, Inc., 2010 U.S. Dist. LEXIS 18253, *4 (E.D. Tex., Mar. 2, 2010) (citing ResQNet and compelling production of "settlement negotiations" relating to a license covering "the accused products *in this case*"); MSTG, Inc. v. AT&T Mobility LLC, 2011 U.S. Dist. LEXIS 23417, *3 (N.D. Ill., Mar. 8, 2011) (citing ResQNet and ordering production of "documents reflecting communications, including settlement negotiations, it had with third-party licensees with whom it entered license agreements concerning *the patents at issue in this case*"); Pandora Jewelry v. Bajul Imps., 2011 U.S. Dist. LEXIS 27340 (E.D. Mo., Mar. 17, 2011) (citing ResQNet and ordering production of license agreements concerning *the patent-in-suit*).

ResQNet has also been applied to the situation — not applicable here — where the plaintiff itself was relying on its previous settlements. See Clear with Computers, LLC v. Bergdorf Goodman, Inc., 2010 U.S. Dist. LEXIS 127193 (E.D. Tex., Nov. 29, 2010) (citing ResQNet and ordering production of settlement-related communications *where plaintiff offered settlements as evidence of appropriate royalty rate*). But no court, to PUBPAT's knowledge, has ever applied ResQNet to require production of settlements involving unrelated patents or products. See Wi-Lan Inc. v. Research in Motion Corp., 2010 U.S. Dist. LEXIS 77776, *18-19

(S.D. Cal., July 28, 2010) (applying ResQNet analysis and declining to compel production of licenses concerning unrelated patents; "Other than the assertion that the Qualcomm licenses are comparable because they involve OFDM technology, Wi-LAN has not demonstrated how the Qualcomm OFDM portfolio licenses ... are relevant to Wi-LAN's royalty analysis in the Texas Action. ... Wi-LAN's motion to compel is DENIED and Qualcomm's motion to quash is GRANTED.").

## IV. GSK's Unexplained, String-Cited Cases Are Not Relevant, Either

None of the cases cited without explanation on page 4 of GSK's motion changes the analysis. The only arguably relevant one is consistent with the post-ResQNet cases discussed above. See Rates Tech. Inc. v. Cablevision Sys. Corp., 2006 U.S. Dist. LEXIS 76595, *2 (E.D.N.Y. Oct. 20, 2006) (in a patent infringement case, "Defendant sought an order directing Plaintiff to produce any licenses, settlement agreements ... concerning ... *the patents at issue* in this case"). Others relate to settlements involving the same or substantially the same dispute. See Compudyne Corp. v. Shane, 244 F.R.D. 282, 282-83 (S.D.N.Y., 2007) (in dispute over failed PIPE [Private Investment in Public Equity] transaction, "Shane seeks ... documents related to any disputes between Compudyne and any other entities *regarding the PIPE*, including documents created in connection with Compudyne's settlements with ..."); Johnson Matthey, Inc. v. Research Corp., 2003 U.S. Dist. LEXIS 11422, *3 (S.D.N.Y., June 12, 2003) (in contract dispute over unpaid royalties, plaintiff obtained production of defendant's settlement of "*substantially similar* breach of contract action" with third party whose royalty interest was the *same* as plaintiff's). Others involve situations where the earlier settlement was directly at issue in the case. See Conopco, Inc. v. Wein, 2007 U.S. Dist. LEXIS 27339, *15 (S.D.N.Y., Apr. 4, 2007) (finding, in a

RICO action, that "[t]he litigation with Roche, *and its resolution*, are clearly relevant to this action"); New York v. Oneida Indian Nation, 2007 U.S. Dist. LEXIS 57469, *40 (N.D.N.Y., Aug. 7, 2007) (deposition regarding settlement discussions was allowed because it was relevant "to determine whether Plaintiffs conducted the negotiation in bad faith - which is a critical element of the Nation's Counterclaim").  And others involve co-defendants in the same action, often where no work-product objection was made.  See Griffin v. Mashariki, 1997 U.S. Dist. LEXIS 19325 (S.D.N.Y., Dec. 8, 1997) (discovery from settling *co-defendant in same action*; no work-product objection made by plaintiff); Tribune Co. v. Purcigliotti, 1996 U.S. Dist. LEXIS 8433 (S.D.N.Y., June 19, 1996) (same); Bank Brussels Lambert v. Chase Manhattan Bank, N.A., 1996 U.S. Dist. LEXIS 1790 (S.D.N.Y., Feb. 20, 1996) (production ordered of agreement *between co-defendants*, after court found that agreement did not embody any attorney-client or work-product information); SEC v. Downe, 1994 U.S. Dist. LEXIS 708, *16 (S.D.N.Y., Jan. 27, 1994) (discovery of settlement with *co-defendant in same action*; no work-product objection made by plaintiff); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 450 (S.D.N.Y. 1988) ("The Magistrate conducted an extensive in camera review of the documents and stated that 'it seems to me that [there is] the likelihood of there being relevant information within these documents.'").

V.     The Work Product Privilege Protects Settlement Agreements

Second Circuit precedent states, "Discovery with respect to a settlement agreement of an ongoing litigation ... is permissible only where the moving party 'lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive. . . .' This is necessary to prevent parties from learning their opponents' strategies." Grant Thornton v.

Syracuse Savings Bank, 961 F.2d 1042, 1046 (2d Cir. 1992) (quoting Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago, 834 F.2d 677, 684 (7th Cir. 1987)). The principle underlying Thornton—that parties' litigation strategy, itself protected by work product privilege, should not be subject to discovery indirectly via settlement documents—applies with equal force to settlement agreements PUBPAT may have entered into with third parties prior to this litigation.

**VI.     Conclusion**

Because GSK has failed to articulate a logically sound theory of relevance that is supported by any precedent, and because settlement agreements are protected by the work product privilege, PUBPAT respectfully asks that the Court deny GSK's motion.

                                            Respectfully submitted,

                                  By:   s/Daniel B. Ravicher
                                        Daniel B. Ravicher (DR-1498)
                                        David Garrod, Ph.D. (DG-6759)
                                        Public Patent Foundation (PUBPAT)
                                        Benjamin N. Cardozo School of Law
                                        55 Fifth Ave., Suite 928
                                        New York, NY 10003
                                        Tel: (212) 790-0442
                                        Fax: (212) 591-6038

March 24, 2011

## CERTIFICATE OF SERVICE

  This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on March 24, 2011.

                   /s/ Daniel B. Ravicher
                   Daniel B. Ravicher (DR 1498)